# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Estate of Krpan*, 2013 IL App (2d) 121424

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF MILAN KRPAN, Deceased (Theodore S. Fins, Claimant-Appellant, v. Maria Krpan, as Administrator of the Estate of Milan Krpan, Deceased, Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-12-1424 |
| Filed | September 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A claim against a decedent's estate for breach of the implied warranty of habitability of a house claimant purchased from decedent was improperly dismissed as untimely, since the matter forming the basis for dismissal was not apparent on the face of the complaint, the administrator of decedent's estate failed to present any evidence that the defects at issue would have been apparent either immediately or, at the latest, "after the heavy rains that occur annually," and despite the administrator's contention that the implied warranty of habitability applied only to defects making the residence uninhabitable, no precedent indicates that the defects must be so severe as to cause the residents to vacate. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 09-P-143; the Hon. William P. Brady, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Peter Thomas Smith and Jeffrey A. Meyer, both of Smith & Meyer LLC, of Sycamore, for appellant.

Richard D. Larson, of Richard D. Larson, P.C., of Sycamore, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices McLaren and Spence concurred in the judgment and opinion.

## OPINION

¶ 1      Theodore S. Fins, who filed a claim against the estate of decedent, Milan Krpan, appeals from an order dismissing as time-barred his claim for breach of the implied warranty of habitability of a house sold to him by decedent. He asserts that the estate's administrator, Maria Krpan, did not adequately support her limitations defense. We agree. Moreover, we find unpersuasive the administrator's alternative bases for affirming. We therefore reverse the dismissal and remand the cause.

¶ 2                                I. BACKGROUND

¶ 3      Decedent died on October 9, 2009. He left a will that named his wife, Maria Krpan, as his executor (administrator). She filed a petition for probate of will and for letters testamentary on November 4, 2009, and the court that day ordered the issuance of letters of office.

¶ 4      On March 5, 2010, Fins mailed to the administrator a form "Claim on Contract." He asserted the breach of an implied warranty of habitability–the structure was not specified–and damages of $144,850. The filing was a bare-bones statement of the amount that Fins asserted he was owed and was not in the form of a conventional pleading. It listed five specific problems that Fins claimed were covered by the warranty: (1) "Leaking/Unfit Windows," (2) "Refinishing Unfit Deck," (3) "Broken/Unfit Skylight," (4) "Latent Defect/Roof Leak," and (5) "Improper Interior Painting."

¶ 5      Fins did not file this form with the court but, rather, consistent with section 18-1(a) of the Probate Act of 1975 (Act) (755 ILCS 5/18-1(a) (West 2010)), mailed it to the administrator. (The form appears in the record as an exhibit to a later filing.)

¶ 6      The administrator filed a verified motion to dismiss the claim, arguing, among other things, that the claim was time-barred. This filing made clear that the administrator understood Fins' claim to relate to a house that Fins and his wife had purchased from decedent, who was the builder, on April 22, 2005. Fins filed a response, attached to which was his affidavit stating when he had "noticed" each problem.

-2-

¶ 7        After discovery, the administrator filed an amended motion to dismiss. Her motion cited section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2010) ("[t]hat the action was not commenced within the time limited by law")) and section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2010) ("[t]hat the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim")) as bases for dismissal. She noted that the applicable limitations period for Fins' claim was four years; under section 13-214 of the Code (735 ILCS 5/13-214(a) (West 2010)), a party must bring an action based on a defect in construction within four years of the time the party reasonably should have known of the act or omission. She also asserted:

"Four of the alleged defects are of a nature that would be clearly evident, including improper interior painting ***, leaking unfit windows, *** need to refinish unfit deck, and broken/unfit skylight ***.

10. Even the fifth alleged defect, *i.e.*, latent defect roof leak *** should have been evident after the heavy rains that occur annually."

She further argued that the implied warranty of habitability applies only to defects so severe that they make a residence uninhabitable. She then asserted:

"[N]one of the alleged defects would affect the habitability of the residence, and obviously they have not because, upon information and belief, Claimants [*sic*] have been residing herein [*sic*] since they took title to the property on April 22, 2005."

She included with the motion no evidence relating to the nature of the defects.

¶ 8        As a final matter, the administrator argued that Fins' averred notifications of decedent must have been oral and that the Dead-Man's Act–section 8-201 of the Code (735 ILCS 5/8-201 (West 2010))–would bar Fins from testifying about any conversation with decedent (or any act that took place in his presence).

¶ 9        Fins filed a response to the amended motion. He asserted that the administrator had no source for personal knowledge of the nature of the defects. He submitted an affidavit (essentially similar to that which he filed in response to the original motion) in which he averred that he bought the house from decedent in April 2005. Further, he first noticed leaking windows in October 2006, problems with the skylight in February 2008, "problems with the paint deteriorating" (which a tradesperson had told him were associated with more general problems with the drywall) in "late 2006," defects in the deck finish in "late 2006," problems with the furnace in "spring 2008," problems with the roof in "July or August of 2008," and "problems with the construction of the eves [*sic*] plate in the roof" in "summer of 2008." He "notified the Decedent" of each problem at about the time he discovered it. Also attached to the response was a copy of the real-estate sales contract and an addendum already introduced by the administrator. The response also included another affidavit of Fins. According to the later affidavit, Fins did not know "the reason[s] for the defect[s] until later inspection[s] by tradesm[e]n."

¶ 10       In a reply, the administrator supplied an affidavit of a contractor who had worked on Fins' house. He averred that he had replaced the furnace and air-conditioning unit, which were in like-new condition, and that Fins had replaced them to improve efficiency.

¶ 11       Fins and the administrator argued the amended motion to the court. The administrator

focused first on whether the implied warranty of habitability applied to any of the defects of which Fins complained. The administrator noted that Fins and his wife had never moved out of the house, equating a breach of the warranty with a defect that makes the house uninhabitable. She also restated the statute-of-limitations argument.

¶ 12 Fins restated his claim that the defects were latent and had not caused noticeable problems until the times mentioned. The Finses were able to stay in the house because they paid for repairs.

¶ 13 On September 17, 2012, the court granted the motion to dismiss:

"THIS MATTER coming on for Ruling on The Estate's Amended Motion to Dismiss the claim filed herein by Theo S. Fins on March 5, 2010, and the court having reviewed the pleadings, the points and authorities submitted, and the arguments of Counsel, and being Fully advised in the premises;

It Is Hereby Ordered that the Estate's Amended Motion to Dismiss is hereby granted."

In its oral ruling, it stated:

"[G]iven this fact pattern, that I don't think is significantly contested ***[,] applying the law to that fact pattern, I think defendant's position is that the statute is [*sic*] run and I'm granting their motion."

¶ 14 Fins filed a timely motion to reconsider. He asserted that the court had granted the motion as one under section 2-619 of the Code and that, under that section, the moving party has the burden of showing the existence of the defense raised as the basis for the dismissal. He argued that the administrator had not met that burden, as all she presented was the bare assertion that the defects could not have been latent. The court denied the motion, adding the clarification that the denial was with prejudice. Fins filed a timely notice of appeal.

¶ 15 II. ANALYSIS

¶ 16 On appeal, Fins argues that no basis existed for the court's ruling that the statute of limitations had run on his claim. He asks that we reverse the dismissal and "reinstate the action."

¶ 17 The administrator responds with three bases for affirming the grant of her motion. First, she argues that "to prevail *** [Fins' pleadings] would have to contain well-pled facts which demonstrate that the alleged defects complained of were discovered by him during the 4-year period for filing the Claim." Second, "[Fins] has attempted to [assert timeliness] not by filing an amended Claim, but rather by filing an ***Affidavit that he 'noticed problems.' " Third, she asserts that Fins' claim did not adequately plead a cause of action for breach of the implied warranty of habitability, because the problems claimed were not ones that affected the habitability of the house.

¶ 18 The court erred in granting the motion. The administrator did not meet her burden of providing facts to support her statute-of-limitations defense. Further, she is incorrect that an affidavit was an improper way to present facts supporting the claim's timeliness. Finally, she is incorrect that a breach of the implied warranty of habitability requires defects so severe

-4-

that they force the resident to cease occupancy of the premises. Review of a section 2-619 motion's grant is *de novo*.[1] *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

¶ 19 A brief initial note on probate-claim procedure might be helpful here to explain, among other things, why Fins did not initially file (nor was he required to file) a pleading that fully set out his claim. "Technical legal form is not required in presentation of a claim against an estate, and proceedings in probate court for the allowance of claims are not governed by the technical rules which apply to a formal suit at law." *In re Estate of Wagler*, 217 Ill. App. 3d 526, 529 (1991). A party with a claim against an estate makes that claim by filing a claim form with the representative (here, the administrator), the court, or both. 755 ILCS 5/18-1(a) (West 2010). The claim is not a pleading. *E.g.*, *Sheetz v. Morgan*, 98 Ill. App. 3d 794, 800-01 (1981). The Act does not require a well-pled claim, such as civil procedure would ordinarily require: the relevant section requires only that a claim "be in writing and state sufficient information to notify the representative of the nature of the claim or other relief sought." 755 ILCS 5/18-2 (West 2010).

¶ 20 The Act does not contemplate the use of dispositive motions of the kind that a litigant would use against a standard civil complaint. For instance, "[a] motion for judgment on the pleadings, applicable to a formal suit at law by section 2-615(e) of the Code *** [(now 735 ILCS 5/2-615(e) (West 2010))], has no application to the adjudication of a claim against an estate, at least where the claim need only comply with section 18-2 of the Probate Act." *Wagler*, 217 Ill. App. 3d at 529. However, in *Wagler*, where no party objected to the improper motion, the reviewing court simply addressed whether the trial court properly entered a judgment regarding the claim. *Wagler*, 217 Ill. App. 3d at 529. Similarly, here, as Fins does not assert that the administrator's section 2-619 motion was procedurally improper, we will evaluate its merits as such.

¶ 21 Turning to the substance of this case, we now explain why the statute-of-limitations portion of the administrator's motion to dismiss did not provide a proper basis for dismissal. When a defendant files a section 2-619 motion to dismiss, the defendant must support the motion with an affidavit showing the basis for dismissal unless the matter forming the basis for dismissal is apparent on the face of the complaint. 735 ILCS 5/2-619(a) (West 2010). Here, the administrator provided no evidence that the defects would have been apparent either immediately or, at the latest, "after the heavy rains that occur annually." Therefore, the motion could be sufficient on this point only if the matter were apparent from the claim, or, to be procedurally generous to the administrator, from Fins' other filings. But nothing about Fins' claim reasonably establishes that the problems could not have developed with time. Thus, the court erred in granting the administrator's motion on statute-of-limitations grounds.

¶ 22 The administrator suggests that Fins' placing new assertions of fact in his response to the motion (rather than amending the claim) was improper. The administrator is incorrect about section 2-619 procedure:

---

[1]This, of course, would not be so if the court had held an evidentiary hearing. *Law Offices of Nye & Associates, Ltd. v. Boado*, 2012 IL App (2d) 110804, ¶ 12.

"If, upon the hearing of the motion, the opposite party *presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect*, the court may hear and determine the same and may grant or deny the motion." (Emphasis added.) 735 ILCS 5/2-619(c) (West 2010).

Moreover, a statute of limitations "is an affirmative defense which a defendant may, in its sole discretion, assert or waive." *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 413 (2009). As timeliness is not an element of a claim, it is not a necessary part of a pleading, even under the stricter civil pleading requirements. Thus, the absence of an allegation that the claim is timely cannot be a defect in the pleading.

¶ 23    Finally, the administrator argues that the court could have granted the motion on the basis that the implied warranty of habitability applies only to defects that make a residence uninhabitable. The affirmative matter that the administrator raises as defeating the claim is that the Finses never stopped living in the house. The administrator is incorrect about the scope of the warranty. "The implied warranty of habitability has been adopted by our courts to protect purchasers of new homes upon discovery of latent defects." *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 114 (2009). "The vendee has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a house that is *reasonably fit* for use as a residence." (Emphasis added.) *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 40 (1979); see also *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 746 (2008) ("The implied warranty of habitability protects the buyer against latent defects by providing a warranty that the house is reasonably fit to use as a residence."). Contrary to the administrator's assertion, no precedent suggests that covered defects must be so severe as to drive the residents to vacate the structure despite normal steps to correct the damage. Such a warranty would be remarkably limited: short of a significant gas leak or the like, at least some residents may tolerate even serious defects for at least some time.

¶ 24    The administrator also asserts that, in any event, the defects alleged by Fins do not go to the habitability of the house. However, a house that is reasonably fit for habitation must, at a minimum, offer reasonable safety and reasonable protection from the elements. The parts of the claim relating to defects in the roof and windows bear an obvious relationship to reasonable fitness for habitation. Therefore, that the defects fall outside the scope of the warranty is not apparent on the face of the claim or Fins' other filings.

¶ 25    To be sure, the relationship to habitability of other claimed defects, particularly that of the interior paint, is murkier. However, the trial court (and, on appeal, both parties) treated Fins' claim as standing or falling as a whole. We therefore will not address individual parts of the claim.

¶ 26                                III. CONCLUSION

¶ 27    For the reasons stated, we reverse the dismissal of Fins' claim and remand the cause.

¶ 28    Reversed and remanded.