# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ALEXANDER L. RINGER
TESTAMENTARY TRUST.

---

ABIGAIL ELISSADEH, YOAV ELISSADEH,
and AVISHAI ELISSADEH,

       Appellants,

v

MIRIAM ADAM, as Trustee of the
ALEXANDER L. RINGER TESTAMENTARY
TRUST,

       Appellee.

UNPUBLISHED
December 20, 2018

No. 340350
Ingham Probate Court
LC No. 16-001430-TT

---

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

In this probate action regarding trust instruments, petitioners appeal as of right the probate court's opinion and order granting summary disposition in favor of the trustee, Miriam E. Adam, under MCR 2.116(C)(10). We affirm.

## I. RELEVANT FACTUAL BACKGROUND

The facts in this case are undisputed. Petitioners are the grandchildren of settlor Alexander L. Ringer, the creator of the trusts in this case, and the children of Deborah Elissadeh, a nonparty to this case. Alexander, a resident of Illinois and the grantor and settlor, died on May 3, 2002. Alexander was survived by his spouse, Claude Ringer; his two children, Deborah and Miriam; and his three grandchildren, the petitioners. Alexander executed a will on January 3, 2002, in Illinois. The will created a testamentary trust, with Claude as the trustee. According to the trust's terms, this initial trust was divided into two separate trusts, the Marital Trust and the Family Trust. Upon Claude's death, the Family Trust would terminate and any remaining assets or income would be divided into equal shares, one share for each of Alexander's living children and one share for each deceased child's descendants if the child predeceased this event. Additionally, if Claude never exercised her power of appointment over all property remaining in the Marital Trust, the Marital Trust would be added to the Family Trust. Claude died on January

-1-

9, 2016, having never exercised this power. Accordingly, the Marital Trust was added to the Family Trust.

Prior to Claude's death, on February 27, 2004, Miriam, Claude, and Deborah entered into an agreement (Inheritance Agreement) to settle issues of inheritance among them. This agreement is at the heart of the parties' dispute in this case. The Inheritance Agreement stated that Claude and Miriam had "been informed that significant assets have been held by a gentleman named 'Peter' in some sort of trust arrangement which was established by Alexander prior to his death." While Deborah was the beneficiary of these assets, she was unable to access these assets because she needed Claude's authorization. Deborah promised to waive and disclaim all rights and interests in Alexander's property located in North America, and Claude and Miriam promised to waive and disclaim all rights and interests in Alexander's assets outside North America, including the separate trust arrangement. Both sides agreed that their promise to waive and disclaim all rights and interests was contingent upon the other side's performance. Furthermore, Claude authorized the transfer of assets from the other trust to Deborah, giving Deborah the access that she needed. Similarly, Deborah authorized Claude and Miriam to take all necessary steps to process Alexander's estate and to transfer all of the estate's North American property to Claude without giving Deborah future notice.

On September 29, 2016, petitioners filed a petition for an order appointing a successor trustee and directing the trustee to pursue wrongfully distributed property. Petitioners argued that, in the Inheritance Agreement, Deborah had disclaimed her beneficiary interest in the trust. Consequently, Deborah should be treated as having predeceased Alexander under both Michigan and Illinois law. Petitioners argued that, as they were her descendants, they should receive her disclaimed beneficiary interest.

Miriam sought summary disposition, arguing that Illinois law barred any disclaimer that Deborah made within the Inheritance Agreement because this agreement was a contract for trust assets. Petitioners responded, seeking summary disposition in their favor and arguing that the Inheritance Agreement was not a contract for trust assets, but was instead merely a contract that happened to contain a disclaimer of trust assets, and that Deborah's disclaimer was therefore valid. The probate court granted Miriam's motion, reasoning that Deborah's disclaimer was invalid because the disclaimer attempted to disclaim her beneficiary interests and, in the same stroke, transfer these interests to Claude. The probate court subsequently denied petitioners' motion for reconsideration.

## II. ANALYSIS

We hold that the probate court did not err by granting Miriam's motion for summary disposition. Under governing Illinois law, Deborah's purported disclaimer was invalid because this disclaimer also attempted to simultaneously transfer the disclaimed assets to Claude.

## A. STANDARD OF REVIEW

A probate court's summary disposition decision is reviewed de novo. *In re Pollack Trust*, 309 Mich App 125, 169; 867 NW2d 884 (2015). When reviewing a summary disposition motion, this Court will consider the "pleadings, admissions, affidavits, and other relevant

documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Id.* (quotation marks and citation omitted). Summary disposition is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists when "the record, viewed in a light favorable to the opposing party, leaves open an issue on which reasonable minds might differ." *Id.*

## B. DISCUSSION

### 1. CHOICE OF LAW

We agree with the parties and the probate court that Illinois law governs this dispute.

MCL 700.7107(a) provides:

The meaning and effect of the terms of a trust are determined by the following:

> (a) The law of the jurisdiction designated in the terms of the trust unless the designation of that jurisdiction's law is contrary to a strong public policy of the jurisdiction having the most significant relationship to the matter at issue.

Additionally, Michigan law generally recognizes contractual choice-of-law provisions, *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 345; 725 NW2d 684 (2006), unless there is no substantial relationship between the parties and the chosen state, or if the application of the chosen state's law would be contrary to Michigan public policy, *Chrysler Corp v Skyline Indus Servs, Inc*, 448 Mich 113, 126; 528 NW2d 698 (1995). The trust and the Inheritance Agreement both provide that Illinois law governs, and there is no strong public policy for Michigan law to control the terms of the trust and agreement because Michigan does not have "the most significant relationship to the matter at issue." See MCL 700.7107(a). Alexander was an Illinois resident and his will and trust were respectively executed and created in Illinois. The only relationship to Michigan is that the trust has been administered in Michigan because Miriam, the trustee, lives in Michigan.

### 2. THE DISCLAIMER

Deborah did not make a valid disclaimer of her trust beneficiary interests. She attempted to both disclaim and transfer her beneficiary interests via contract. Such a disclaimer is barred under Illinois law.

Under Illinois law, a disclaimer is the refusal to accept property that the disclaimant is otherwise legally entitled to. See 755 Ill Comp Stat Ann 5/2-7(d). In the context of probate and testamentary transfers, a disclaimer's effect is generally that the disclaimant is treated as having predeceased the testator, and the interest passes to the disclaimant's descendants. See 755 Ill Comp Stat Ann 5/2-7(d). Waiver is the "intentional relinquishment of a known right." *Gallagher v Lenart*, 226 Ill 2d 208, 229; 874 NE2d 43 (2007).

755 Ill Comp Stat Ann 5/2-7(e) provides, in pertinent part:

Waiver and Bar. The right to disclaim property or a part thereof or an interest therein shall be barred by . . . (2) an assignment, conveyance, encumbrance, pledge, sale or other transfer of the property, part or interest, or a contract therefor, by the disclaimant or his representative . . . .

The Illinois Supreme Court interpreted this provision in *Tompkins State Bank v Niles*, 127 Ill 2d 209; 537 NE2d 274 (1989). In that case, the devisee had entered into a land contract with the testator in which the testator would sell a piece of real property to the devisee. *Id*. at 213. However, some years later, the devisee executed a mortgage on this property, in breach of this land contract. *Id*. at 213-214. Some years after this, the testator died, leaving the devisee all of her property, including the piece of real property with the mortgage encumbrance. *Id*. at 214. According to the testator's will, if the devisee had predeceased the testator, the property would go to another party. *Id*. The devisee filed a disclaimer in the trial court, disclaiming all interests in the testator's bequeaths and allowing these to go to the other party. *Id*. The trial court held this to be an invalid disclaimer.

The trial court reasoned that the purpose of section 2-7(e) was to prevent persons from disclaiming their testamentary interests while also acting "in a manner which is inconsistent with a complete renunciation of [their] interest in the property being disclaimed." *Id*. at 226. The trial court stated that the legislature wished to prohibit persons from disclaiming testamentary interests and still exercising power over those disclaimed interests. *Id*. at 225-226.

The appellate court reversed, and the Illinois Supreme Court agreed and held that the devisee did not act in a manner inconsistent with a complete renunciation of the property interest that had been devised to him. *Id*. at 226. When the devisee encumbered the property (which is one of the prohibited actions under 2-7(e)), he did not assign his rights as a beneficiary of the testator's estate. *Id*. He merely assigned his rights conferred under the land contract, a completely separate set of rights from those of the will. *Id*. If the devisee had, instead, attempted to assign his rights as a beneficiary, the implication is that the Illinois Supreme Court would have instead held that the disclaimer was barred because this would have been a manner inconsistent with a complete renunciation of interest.

In contrast, the court in *In re Sterba Estate*, 2016 IL App (3d) 150483; 56 NE3d 1118 (2016), held that the petitioner's disclaimer was invalid because the disclaimer was issued in a manner inconsistent with a complete renunciation of interest in the property. *Id*. at ¶ 12. In that case, the deceased testator had bequeathed the petitioner real property from her estate. *Id*. at ¶¶ 3-4. The petitioner then executed a disclaimer in which he purported to disclaim his interests in this property. *Id*. at ¶ 4. However, in this disclaimer, the petitioner also included language stating that he was disclaiming his interests "so that [another party] shall take the shares which [the petitioner] would have received but for this disclaimer of interest." *Id*. The petitioner filed for bankruptcy approximately three months after executing this disclaimer, and the bankruptcy trustee challenged this disclaimer. *Id*. at ¶ 5,

In holding that this disclaimer was invalid, the court noted the express terms of the disclaimer, in which the petitioner explicitly stated that he was disclaiming his interest in order to allow the other party to obtain his interest. *Id*. at ¶ 12. In form, the petitioner attempted to disclaim his interest in the property; however, in *substance*, this purported "disclaimer" assigned

the petitioner's interests to the other party. *Id*. Therefore, the petitioner's actions dealt with the "devised estate in a manner which [was] inconsistent with a complete renunciation of any interest in the property being disclaimed." *Id*., quoting *Tompkins*, 127 Ill 2d at 226 (quotation marks omitted).

In this case, Deborah's disclaimer is also invalid because it was executed in a manner inconsistent with a complete renunciation of her beneficiary interest in the property being disclaimed: her disclaimer also attempted to transfer her disclaimed beneficiary interests to Claude.

The interpretation of a contract is a question of law that is subject to de novo review. *Richard W McCarthy Trust v Illinois Cas Co*, 408 Ill App 3d 526, 535; 946 NE2d 895 (2011). When interpreting a contract, a court must look to the intent of the parties. *Empress Casino Joilet Corp v WE O'Neil Constr Co*, 2016 Ill App (1st) 151166, ¶ 62; 68 NE2d 856 (2016). To do this, a court must examine the plain language of the contract. *Id*. If the words are clear and unambiguous, a court must give them their plain and ordinary meaning. *Id*. Contract provisions must not be read in isolation but with the entirety of the agreement. *Id*.

The parties do not dispute that the Inheritance Agreement is an enforceable contract. Therefore, section 2-7(e) applies. See 755 Ill Comp Stat Ann 5/2-7(e) (emphasis added) ("The right to disclaim property or a part thereof or an interest therein shall be barred by . . . an assignment, conveyance, encumbrance, pledge, sale or other transfer of the property, part or interest, *or a contract* . . . ."). In this contract, Deborah transferred interests that she already disclaimed in the same instrument. Claude and Miriam agreed to give up their rights and interests in assets outside of North America in return for Deborah giving up her rights and interests in property located within North America. However, this was not a mere disclaimer. Paragraph 11 states that

> Deborah authorizes Claude and Miriam to execute all documents and to pursue any and all legal proceedings necessary to complete processing the Estate of Alexander and *the transfer of any and all assets located in North America from the Estate of Alexander to Claude,* individually or as Trustee, without further notice to Deborah. [Emphasis added.]

This language is clear, plain, and unambiguous. Deborah authorized a transfer of her beneficiary interests in Alexander's North American assets to Claude. Yet, in the same instrument, she also purported to disclaim those same beneficiary interests.

Albeit under different factual circumstances, the structure of this agreement is similar to the disclaimer in *Sterba Estate*. In that case, the petitioner's purported disclaimer stated that he was disclaiming his interests "so that [another party] shall take the shares which [the petitioner] would have received but for this disclaimer of interest." *Sterba Estate*, 2016 Ill App (1st) 151166 at ¶ 4. Although the Inheritance Agreement in this case did not explicitly state that the reason for Deborah's disclaimer was for Claude to receive Deborah's beneficiary interests, it explicitly transferred interests to Claude from Deborah, interests that Deborah previously attempted to disclaim in the same agreement. The interests Claude received were, essentially, interests that Deborah "would have received but for this disclaimer of interest." See *id*. While in

form the Inheritance Agreement may be structured to operate as a disclaimer, in substance it was not valid because Deborah effectively assigned her disclaimed interests to Claude. See *id*. at ¶ 12. Deborah's purported disclaimer, then, was activity "inconsistent with a complete renunciation of any interest in the property being disclaimed." See *id*. (quotation marks and citation omitted). If she had completely renounced *all* interests in it (i.e., if she had actually disclaimed), then she would not have attempted to exercise power over those interests by transferring them to Claude.

Petitioners argue that the plain and unambiguous meaning of the Inheritance Agreement does not indicate a transfer of interests. Although the agreement was a contract, petitioners contend that it was not a contract for "an assignment, conveyance, encumbrance, pledge, sale or other transfer of the property." See 755 Ill Comp Stat Ann 5/2-7(e). This argument is unpersuasive. As previously discussed, paragraph 11 of the agreement clearly authorized Claude and Miriam to transfer Deborah's disclaimed property interests to Claude.

Petitioners, however, take issue with paragraph 11 and dispute its interpretation. Petitioners note that, at the time this agreement was created, Claude was still the trustee of the Marital and Family Trusts. Petitioners argue, then, that paragraph 11 merely allowed the North American assets to be transferred to Claude in light of her fiduciary duties as the trustee.

However, a contract requires consideration, and it cannot be interpreted in such a way so as to make other portions, or the entire agreement, meaningless. See *Atwood v St Paul Fire and Marine Ins Co*, 363 Ill App 3d 861, 864; 845 NE2d 68 (2006) (stating the "well-settled principle of contract construction: a contract must not be interpreted in a manner that nullifies provisions of that contract"). If Deborah had truly disclaimed her interest, as petitioners contend, and had not transferred her interest to Claude, then Deborah would be treated as having predeceased Alexander, meaning that her descendants would take this interest. Deborah would have disclaimed her interests in exchange for Claude and Miriam doing the same, and, yet, Deborah's children would be next in line to receive this disclaimed interest. Taking this interpretation approach, Deborah would have given up essentially nothing, and Claude and Miriam would have received nothing in return. As the probate court noted at the hearing, this is an illogical interpretation of this agreement because it makes the contract virtually meaningless. Petitioners' interpretation also fails to account for the rest of the contract. Paragraph 11 cannot be read in isolation but must be read in context with the rest of the agreement. See *Empress*, 2016 Ill App (1st) 151166 at ¶ 62. Looking to the plain language of the agreement and the intent of the parties, it is clear that Deborah attempted to both disclaim and transfer her interests to Claude.

Petitioners also argue that Alexander's intent, as the grantor, precludes the probate court's interpretation. Alexander's Last Will and Testament explicitly prohibited beneficiaries from assigning or transferring their interests in the Family Trust. Furthermore, the will stated that in the event of a child's death the child's descendants would receive the deceased child's interests per stirpes. However, these arguments appear neither in petitioners' lower court brief nor in the record from the motion hearing. Petitioners therefore waived these arguments for appeal. See *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008). Moreover, "the [trial] court's primary concern in construing a trust is to discover the settlor's intent, which the court will effectuate if it is not contrary to law or public policy." *First Nat'l Bank of Chicago v Canton Council of Campfire Girls, Inc*, 85 Ill 2d 507, 513; 426 NE2d 1198 (1981) (citation

omitted).  Further, section 2-7(e) prohibits disclaimers coupled with a transfer of the disclaimed interests.

## C.  CONCLUSION

The trial court did not err by granting Miriam's motion for summary disposition. Deborah promised to disclaim her beneficiary interests and then, in the same stroke, transferred those same disclaimed interests to Claude.  This action is barred by Illinois law.  To take petitioners' approach would render the Inheritance Agreement virtually meaningless.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Michael F. Gadola